SHAW, Justice.
In separate petitions, Hampton Insurance Agency (“Hampton”) and Ginger A. Spencer (case no. 1101211) and Acceptance Indemnity Insurance Company (“Acceptance”) and Ashland General Agency, Inc. (“Ashland”) (case no. 1101226), the defendants in an action filed in the Hale Circuit Court by Mary Alice Patton d/b/a Hole in the Wall Lounge alleging that they failed to procure insurance coverage, petition this Court for writs of mandamus directing the trial court to transfer the underlying action to the Tuscaloosa Circuit Court. Because of the identical nature of the mandamus relief sought, we have consolidated the two petitions for the purpose of issuing one opinion. We grant the petitions and issue the writs.

Facts and Procedural History

In November 2008, Patton purchased from Spencer, an independent insurance agent who was doing business in Tuscaloosa County as Hampton,[1] insurance coverage for her lounge located in Hale County. At the heart of the underlying dispute is the nature and extent of the coverage Patton sought. Patton’s policy, which was obtained by Hampton through Ashland, a surplus-lines agency that serves as a general agent for Acceptance, included only liquor-liability and general-liability coverage.
In May 2009, the building in which Patton operated the lounge was destroyed by fire. Upon filing an insurance claim associated with the damage to the lounge, Patton was informed that her insurance policy did not include coverage for property damage. As a result, on August 18, 2009, Patton sued Hampton and fictitiously named “Defendants A, B, and C,”[2] alleging that the “Defendants were negligent *349 and/or wanton in their procurement of full coverage insurance for [Patton] on her lounge building and its contents.”[3] Hampton responded with a motion to dismiss pursuant to Rule 12(b)(3), Ala. R. Civ. P., or, in the alternative, to transfer the case on the ground that Hale County constituted an improper venue. More specifically, Hampton’s motion alleged that Hampton is a sole proprietorship whose only office is located in Tuscaloosa County. In support of its motion, Hampton attached Spencer’s affidavit reflecting that Hampton is an unincorporated entity operated by Spencer as a sole proprietorship in Tuscaloosa County, where Spencer resides.
Patton subsequently amended her complaint to add numerous additional counts and to name Spencer, Ashland, and Acceptance as defendants. Thereafter, Hampton renewed its initial motion seeking a transfer of the case to Tuscaloosa County, which Spencer, Acceptance, and Ashland joined. Hampton, Spencer, Acceptance, and Ashland also subsequently — and repeatedly — filed supplemental materials, including both information disclosed during discovery and recently released decisions of this Court, in support of the requested transfer, which Patton continued to oppose.[4]
On June 15, 2011, following a hearing, the trial court entered an order denying the requested transfer based on its conclusion that venue in Hale County was proper at the time Patton originally filed her action against Hampton. Specifically, the trial court concluded that § 6-3-6, Ala. Code 1975,[5] and this Court’s decisions in Ex parte Greenetrack, Inc., 25 So.3d 449 (Ala.2009), Ex parte Perfection Siding, Inc., 882 So.2d 307 (Ala.2003), and Ex parte Swift Loan & Finance Co., 667 So.2d 706, 707 (Ala.1995),[6] controlled. In further support of its decision, the trial court’s order denying the requested transfer included the following:
“Hampton Insurance Agency and/or Ginger A. Spencer conducted business in Hale County in that they sold at least five (5) policies of insurance in Hale County, they inspected the properties that were insured, advertised in a phone book of general publication and distribution in Hale County and the policy in question in this case was delivered via United States Postal Service regular mail in Hale County. The actual policy at issue in this matter was sold by Hampton and/or Ginger Spencer, Brokered through Ashland and written by Acceptance.”
The instant petitions were filed on July 21, 2011; this Court ordered answers and briefs.

*350
Standard of Review

“ ‘ “The question of proper venue for an action is determined at the commencement of the action.” ’ Ex parte Pike Fabrication, Inc., 859 So.2d 1089, 1091 (Ala.2002) (quoting Ex parte Pratt, 815 So.2d 532, 534 (Ala.2001)). If venue is improper at the outset, then upon motion of the defendant, the court must transfer the case to a court where venue is proper. Ex parte Pike Fabrication, 859 So.2d at 1091. If the defendant’s motion is denied, then the defendant is entitled to seek review of this decision by petitioning for a writ of mandamus. Ex parte Alabama Great Southern R.R., 788 So.2d 886, 888 (Ala.2000).
“ ‘Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.’ Ex parte Integon Corp., 672 So.2d 497, 499 (Ala.1995). This Court reviews mandamus petitions seeking review of a venue determination by asking whether the trial court exceeded its discretion in granting or denying the motion for a change of venue. Ex parte Scott Bridge Co., 834 So.2d 79, 81 (Ala.2002). Also, in considering such a mandamus petition, this Court is limited to those facts that were before the trial court. Ex parte Pike Fabrication, 859 So.2d at 1091.”
Ex parte Perfection Siding, Inc., 882 So.2d at 309-10.

Discussion

In their respective petitions, the petitioners contend that venue was improper in Hale County at the time the underlying litigation commenced and that the trial court, therefore, erred in denying their motions to transfer the action to Tuscaloosa County. Specifically, relying on this Court’s recent decision in Ex parte Hughes, 51 So.3d 1016 (Ala.2010), they maintain that § 6-3-2, Ala.Code 1975, the venue provision applicable to actions against individuals, clearly applies to sole proprietorships such as Hampton and that, therefore, venue is proper in Tuscaloosa County where Spencer resides and where all actions related to procurement of the subject insurance indisputably occurred. The petitioners further contend that the subsequent amendment of Patton’s complaint to name Acceptance and Ashland as defendants, which amendment they argue was not in keeping with the rules of fictitious-party practice, was insufficient to cure the improper venue at the beginning of the action and, thus, did not defeat the trial court’s mandate to transfer the action pursuant to Rule 82(d), Ala. R. Civ. P.,[7] to Tuscaloosa County. Patton counters that venue in Hale County was proper at the time of commencement of the action because, she contends, her amended complaint adding Acceptance and Ashland relates back to the filing of her original complaint; thus, she says, § 6-3-7(a)(3), Ala.Code 1975,[8] not § 6-3-2(a)(3), controls *351 and because venue is proper in Hale County as to Acceptance and Ashland, it is also proper there as to Hampton. See Rule 82(c), Ala. R. Civ. P. (“Where several claims or parties have been joined, the suit may be brought in any county in which any one of the claims could properly have been brought.”). We disagree.
“As this Court has frequently held, proper venue for an action is determined at the commencement of the action. Ex parte Mitchell, 690 So.2d 356 (Ala.1997); Ex parte Parker, 413 So.2d 1105 (Ala.1982); Ex parte Wilson, 408 So.2d 94 (Ala.1981); see also Rule 82(d)(1), Ala. R. Civ. P. If venue is not proper at the commencement of an action, then, upon motion of the defendant, the action must be transferred to a court where venue would be proper. Parker, supra; Rule 82(d)(1), Ala. R. Civ. P.
“Section 6-3-2, Ala.Code 1975, governs venue of actions against individuals. It provides that such an action must be brought in the county of the defendant’s residence or ‘in the county in which the act or omission complained of may have been done or may have occurred.’ § 6-3-2(a)(3); see also Rule 82(b)(1)(A), Ala. R. Civ. P.”
Ex parte Overstreet, 748 So.2d 194, 196 (Ala.1999) (emphasis added).
This Court, in determining the appropriate venue provision in actions initiated against a sole proprietorship, stated the following in Ex parte Hughes, supra:
“Hughes testified at the hearing on his motion to transfer that he operated RBM Transport as an unincorporated entity. Hughes testified that he had no partners in the endeavor, and it appears that RBM Transport had no distinct legal existence other than its operation by Hughes. For legal purposes, RBM Transport Company must therefore be considered a sole proprietorship. See Black’s Law Dictionary 1427 (8th ed.2004) (defining ‘sole proprietorship’ as ‘[a] business in which one person owns all the assets, owes all the liabilities, and operates in his or her personal capacity1). In Carolina Casualty Insurance Co. v. Williams, 945 So.2d 1030, 1035 (Ala.2006), this Court recognized that ‘Alabama law makes no distinction between an individual and a sole proprietorship operated by the individual. They are considered the same for legal purposes.’ (Citing Clardy v. Sanders, 551 So.2d 1057, 1059-60 (Ala.1989).) Accordingly, whether ‘Jesse Hughes d/b/a RBM Transport Company’ is characterized as an individual or a sole proprietorship the end result is the same— [the] breach-of-contract action must be viewed as one against an individual, and venue is accordingly governed by § 6-3-2(a), which by its terms applies to ‘proceedings of a legal nature against individuals ’ (emphasis added).”
51 So.3d at 1018-19 (footnote omitted).
In the present case, Spencer presented undisputed affidavit testimony demonstrating that Hampton is an unincorporated entity she operates as a sole proprietorship in Tuscaloosa County, where she also resides. That evidence brings this case squarely within this Court’s holding in Ex parte Hughes. Because Hampton, a sole proprietorship, was the only named defendant at the time the action was filed, the venue provisions governing individuals applied, and venue was proper either “in the county of [Spencer d/b/a Hampton’s] residence or in the county in which the act or *352 omission complained of ... occurred.” § 6-3-2(a)(3). Under either of the foregoing alternatives, venue was clearly proper in Tuscaloosa County, where Patton purchased the allegedly deficient insurance coverage, not in Hale County.
Having determined that, at the time of Patton’s original filing, venue was improper in Hale County, we now consider whether Patton’s amendment substituting Acceptance and Ashland as named defendants related back to the commencement of her action and was, therefore, sufficient to render Hale County a proper venue for the action. We conclude that it was not.
As noted above, “[t]he question of proper venue for an action is determined at the commencement of the action.” Ex parte Pratt, 815 So.2d 532, 534 (Ala.2001). It is also well established that
“[l]ater amendments to the complaint to add parties or claims, with the exception of substituting the true name of a fictitiously named party, are not considered in determining whether venue is improper at the commencement of the action. See Rule 15(c)(4)[, Ala. R. Civ. P.] (‘relation back is permitted by principles applicable to fictitious party practice pursuant to Rule 9(h)[, Ala. R. Civ. P.]’).”
Ex parte Lugo de Vega, 65 So.3d 886, 892 (Ala.2010). See also Overstreet, 748 So.2d at 197 (recognizing that, “[i]n Ex parte Smith, 423 So.2d 844 (Ala.1982), this Court held that the substitution of a party for a fictitiously named party would relate back to the date of the commencement of the action for the purpose of determining proper venue”). However, in order for the relation-back doctrine to apply, a party must comply with the requirements of Rule 9(h), Ala. R. Civ. P. See Columbia Eng’g Int’l, Ltd. v. Espey, 429 So.2d 955, 958-59 (Ala.1983) (“[A] plaintiff, in order to invoke the relation back principles of Rules 9(h) and 15(c), [Ala. R. Civ. P.,] must meet the following criteria: 1) Plaintiff must state a cause of action against the fictitious party in the body of the original complaint; and 2) plaintiff must be ignorant of the identity of the fictitious party, in the sense of having no knowledge at the time of the filing that the later named party was in fact the party intended to be sued.”).
As explained in Ex parte Griffin, 4 So.3d 430 (Ala.2008), a case Patton cites in her response to the petitions:
“This Court has held with regard to Rule 9(h) and the relation-back principles of Rule 15(c), Ala. R. Civ. P., that the plaintiff must state a cause of action against the fictitiously named party in the body of the original complaint; that the plaintiffs ignorance of the true identity of the party intended to be sued is ‘in the sense of having no knowledge’ of the party’s identity at the time the complaint was filed; and that the plaintiff must have used due diligence in attempting to discover the identity of the fictitiously named party. Columbia Eng’g Int’l Ltd. v. Espey, 429 So.2d 955, 958 (Ala.1983). To be entitled to the benefit of the relation-back principles, the plaintiff must act with due diligence to ascertain the fictitiously named defendant’s true name and to promptly amend the complaint to correctly identify that defendant. The due-diligence standard, as stated in Davis v. Mims, 510 So.2d 227, 229 (Ala.1987), ‘is whether the plaintiff knew, or should have known or was on notice, that the substituted defendants were in fact the parties described fictitiously.’ ”
4 So.3d at 436. See also McGhee v. Martin, 892 So.2d 398, 410-11 (Ala.Civ.App.2004) (noting that Rule 9(h) allows relation back only for the benefit of “ ‘[t]he diligent plaintiff who is truly ignorant of the defendant’s identity at the time of filing the *353 original complaint. ... ’ ” (quoting Kinard v. C.A. Kelly & Co., 468 So.2d 133, 135 (Ala.1985))).
Patton added Acceptance and Ashland as defendants after Hampton’s initial motion seeking a change of venue was filed. Although Patton contends, in her response to the instant petitions, that “[she] was ignorant of the identity of Ashland and Acceptance at the time of the filing of the original complaint,” we find that claim untenable. Specifically, we note, as do the petitioners, that Acceptance was identified on the face of Patton’s original complaint as the company from whom Hampton procured the subject coverage on Patton’s behalf. Therefore, we agree with the petitioners that there can be no argument that Patton either “ ‘ha[d] no knowledge’ of [Acceptance and/or Ashland’s] identities] at the time the complaint was filed” or that she “used due diligence in attempting to discover the identities] of the fictitiously named parties].” Griffin, 4 So.3d at 436.
In addition, we note that, as reflected on documentation attached to her amended complaint, a policy-change endorsement reinstating Patton’s policy, dated April 27, 2009 — which date is before the fire at Patton’s lounge and the resulting litigation— identified Acceptance as Patton’s insurance company and Ashland as Acceptance’s “authorized representative.”[9] Furthermore, as acknowledged in Patton’s original complaint, not only did the face of the policy, which was provided to Patton following her purchase of insurance coverage, identify Acceptance as her insurer, but Spencer also testified that when Patton initially telephoned her office following the fire, Patton was referred directly to Ashland to inquire about making a formal claim.
Moreover, although Patton contends that her amended complaint properly substituted Acceptance and Ashland for fictitiously named defendants included in her original complaint, the language of her amended complaint appears to belie Patton’s argument in this regard. Specifically, in her brief to this Court, Patton states that “[o]n October 16, 2009, approximately two months after the filing of the original complaint, [Patton] filed an amended complaint substituting Acceptance ..., Ashland ..., and ... Spencer for the fictitious parties alleged in the original complaint.” Patton’s response brief, at p. 2. However, the pleading reveals that although Acceptance and Ash-land were added as defendants and numerous causes of action were asserted against them, there is nothing to suggest that their addition was a substitution of the true names of fictitiously named defendants A-C, as Patton argues. In fact, we note both the absence of any language in the amended complaint expressing the alleged intended “substitution” and the fact that, despite the purported substitution, fictitiously named defendants A-C remained as parties in Patton’s amended complaint. Thus, as of the filing of that amended pleading, all defendants that were purportedly fictitiously named at the commencement of Patton’s suit were still apparently unknown to Patton. Therefore, whatever arguments Patton may advance in this respect, her amended complaint seems to support the petitioners’ argument that her amendment did not effect a substitution of named defendants for previously identified fictitiously named defendants but, rather, merely added new defendants. See Overstreet, 748 So.2d at *354 197 (holding “that the addition of a new party, as distinguished from the substitution of a party for a previously named fictitious party, would not relate back for purposes of determining proper venue”). See also Ex parte Parker, 413 So.2d 1105, 1106 (Ala.1982), and Ex parte Wilson, 408 So.2d 94, 97 (Ala.1981).
Even assuming, however, that Patton took the proper procedural steps to substitute Acceptance and Ashland for defendants described fictitiously in her original complaint, we conclude that Patton possessed, before the filing date of that pleading, sufficient information to put her on notice, with the exercise of due diligence, that Acceptance and Ashland were the parties “who assisted [Hampton], and failed to procure ... full coverage insurance _” See supra n. 2. It is undisputed that Patton was provided documentation identifying both Acceptance and Ashland before she filed her original complaint. We, therefore, disagree with the argument that she was “truly ignorant” at the time her initial complaint was filed of their identities or of their role in issuing her policy. See also Pearson v. Brooks, 883 So.2d 185, 187-88 (Ala.2003) (concluding that, based on plaintiffs knowledge of names and job titles of coworkers, she “could not have reasonably been ignorant of their identities”), and Miller v. Norwood Clinic, Inc., 577 So.2d 860, 865 (Ala.1991) (concluding that medical records in plaintiffs possession prior to filing of original complaint revealed knowledge sufficient to identify supposed fictitiously named defendants as “parties intended to be sued”). Instead, it appears that, at the time of her initial complaint, Patton knew the identities of both Acceptance and Ashland, as well as their respective roles in the issuance of the policy that allegedly provided insufficient insurance coverage, or, at the very least, that, in the exercise of due diligence, that information was easily ascertainable by Patton. Cf. Ex parte Nationwide Ins. Co., 991 So.2d 1287, 1291 (Ala.2008) (“eon-clud[ing] that [plaintiffs] amendment to substitute Nationwide for a fictitiously named defendant [did] not relate back to the date of her original complaint because she knew or should have known Nationwide’s identity” as her insurer or “could have discovered Nationwide’s identity and the existence of ... coverage simply by examining her policy”), and Ex parte Ismail, 78 So.3d 399, 405 (Ala.2011) (finding that, where plaintiffs possessed medical records identifying treating physician before they filed original complaint, “[they] did not exercise due diligence ... before filing their complaint, in identifying [physician] as the proper party to be sued”). Given those circumstances, we conclude, as we did in Pearson, supra, that it was “unreasonable to believe that [Patton] was ignorant of [Ashland’s] and [Acceptance’s] identities as required to proceed under the fictitious-party practice allowed by Rule 9(h).” 883 So.2d at 188.
Because Acceptance and Ashland were not properly substituted for fictitiously named defendants included in Patton’s original complaint, for purposes of establishing venue Patton’s amendment did not relate back to the date of her original complaint and did not render Hale County, an improper venue at the commencement of the action, a proper venue. Instead, for purposes of establishing venue at the commencement of the instant action, Hampton was the sole defendant. Because, under § 6-3-2, venue in Hale County was improper as to Hampton, a sole proprietorship, the trial court exceeded its discretion in denying the motions to transfer the case to Tuscaloosa County, where venue was proper. Ex parte Perfection Siding, Inc., 882 So.2d at 309-10. In light of the foregoing, we conclude that the petitioners have met the requirements for the issu- *355 anee of the requested writs of mandamus; therefore, the trial court is directed to vacate its order denying the motions to transfer and to enter an order granting those motions and transferring the underlying action to the Tuscaloosa Circuit Court.
1101211 — PETITION GRANTED; WRIT ISSUED.
1101226 — PETITION GRANTED; WRIT ISSUED.
MALONE, C.J., and STUART, PARKER, and WISE, JJ., concur.

. According to Spencer, she "shops” a client's requested coverage from several different carriers from whom she can obtain coverage quotes but with whom she has no contractual relationship.

. Patton's complaint identified the fictitiously named defendants as "those persons, firms, *349 partnerships, corporations, and/or entities doing business as or on behalf of or who assisted, and failed to procure ... full coverage insurance.”

. The record reflects that the Hole in the Wall Lounge was located in a modified mobile home.

. Specifically, as noted in Hampton and Spencer’s petition, although the initial motion to transfer was based on § 6-3-6, Ala.Code 1975, once "this Court, in Ex parte Hughes, [51 So.3d 1016 (Ala.2010),] clarified that the proper venue provision applicable to a sole proprietorship is Ala.Code § 6 — 3—2[,] Hampton and Spencer supplemented their Motions to Transfer based on this clarification in the law.” Hampton and Spencer’s petition, at p. 10 n. 19.

. Section 6-3-6 provides that an ”[a]ction against an unincorporated organization or association may be commenced in any county where such organization or association does business or has in existence a branch or local organization.”

. The three cases cited by the trial court concern venue determinations in actions in which the defendants were corporations.

. Rule 82(d)(1) provides: "When an action is commenced laying venue in the wrong county, the court, on timely motion of any defendant, shall transfer the action to the court in which the action might have been properly filed and the case shall proceed as though originally filed therein.”

. Section 6-3-7(a)(3), which prescribes venue of civil actions against both foreign and domestic corporations, provides that venue is proper "[i]n the county in which the plaintiff resided.” Notably, Patton is proceeding under subsection (a)(3) as opposed to subsection (a)(1), which provides that venue against a corporate defendant will lie "[i]n the county *351 in which a substantial part of the events or omissions giving rise to the claim occurred. ...” Similarly, Patton does not argue in her response that the events or omissions giving rise to the underlying claims occurred in Hale County.

. The petitioners contend that, as demonstrated through the deposition testimony of Spencer and a certified-mail receipt, copies of all information pertinent to Patton’s policy, in-eluding documents identifying both Acceptance and Ashland, were provided to Patton’s initial counsel of record on July 8, 2009, before her original complaint was filed.